**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0588n.06
Filed: October 1, 2008

**No. 07-2296**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VIRGA CARTER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF WYOMING and JESSE LOPEZ, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |

Before: MARTIN, ROGERS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. The City of Wyoming and Officer Jesse Lopez appeal the district court's denial of their motion for summary judgment on (1) Virga Carter's § 1983 claim against Officer Lopez and (2) Carter's state-law claims against the City of Wyoming and Officer Lopez. Officer Lopez seeks qualified immunity from the § 1983 claim, and the City and Officer Lopez seek governmental immunity from the state-law claims. We affirm.

I.

On the afternoon of November 4, 2004, Carter went to Sergio Jewelry Store to pick up her grandson's diamond earrings. Upon learning that a diamond was missing from one of the earrings, Carter began to argue with the owner about who was responsible for the missing diamond. The argument became heated, and someone eventually called the police.

Officer Lopez was the second police officer to arrive at the jewelry store. As he entered the store, he saw Carter "screaming at the store owner," asked her "at least twice to calm down [and] step outside" and told her if she did not calm down he would arrest her for disorderly conduct. JA 127–28. Carter concedes that she "might have . . . gotten loud" but denies that he asked her to step outside. JA 76. At some point, Carter approached Officer Lopez and asked him what nationality he was. While she says she was concerned that he "wouldn't be able to speak English," JA 74, he says her statement was more pointed: "[A]re you Mexican[?] I'm not going anywhere [with] you." JA 128. Officer Lopez then told Carter he was arresting her, led her out to the parking lot, handcuffed her and drove her to the jail.

Carter filed a complaint that included (1) a § 1983 claim alleging excessive force by Officer Lopez, (2) a § 1983 claim against the City alleging "failure to adequately discipline, train, screen, supervise, transfer, counsel or otherwise direct or control police officers," JA 36, (3) a state-law claim against Officer Lopez and the City for gross negligence and (4) a state-law claim against Officer Lopez and the City for assault and battery. Officer Lopez and the City filed a motion for summary judgment, asserting qualified immunity from the § 1983 claims and seeking governmental immunity from the state-law claims.

The district court dismissed Carter's § 1983 claim against the City but denied the motion for summary judgment as to the § 1983 claim against Officer Lopez and the state-law claims against the City and Officer Lopez.

No. 07-2296
*Carter v. City of Wyoming, et al.*

II.

To overcome the defense of qualified immunity, a plaintiff asserting a constitutional tort claim against a police officer must show that (1) "the officer's conduct violated a constitutional right" and (2) "the right was clearly established" at the time of the officer's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). An officer's use of force violates the Fourth Amendment "if it is excessive under objective standards of reasonableness." *Id.* at 202. In the context of an arrest, we consider three factors in assessing the reasonableness of the officer's actions: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). At the summary-judgment stage, we review the facts "in the light most favorable to" the non-moving party, which "usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, __ U.S. __, 127 S. Ct. 1769, 1774–75 (2007) (internal quotation marks omitted).

Much of Officer Lopez's argument on appeal takes aim at the district court's reading of the appropriate factual inferences in this case. Yet we have no authority to review such arguments at this stage in the case. *See Johnson v. Jones*, 515 U.S. 304, 307 (1995). As we have said before, our jurisdiction to hear interlocutory appeals from an order denying qualified immunity to a government official "does not extend to appeals that merely quibble with the district court's reading of the factual record." *Leary v. Livingston Country*, 528 F.3d 438, 441 (6th Cir. 2008) (internal quotation marks

3

omitted). Our interlocutory jurisdiction, in other words, extends only to *legal* arguments—that, for example, plaintiffs' fact-supported allegations, as construed in her favor, do not state a constitutional claim or that they do not state a clearly established constitutional claim.

In addition to challenging the district court's assessment of the proper factual inferences that can be drawn from the record, Officer Lopez invokes what appears to be a slight modification of the *Johnson* rule. Relying on the Supreme Court's recent decision in *Scott*, he argues that a videotape of the incident and an MRI "blatantly contradict" Carter's factual allegations. One premise of this argument appears to be correct. Appellate judges are free to trust their eyes when a videotape unequivocally shows what happened during an encounter with the police and unequivocally contradicts the claimant's version of events. As *Scott* explains: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S. Ct. at 1776. While *Scott* did not discuss *Johnson*, it held that a videotape "quite clearly contradict[ed]" the plaintiff's story about whether excessive force was used during a police chase, then proceeded to grant qualified immunity to the officer defendant in the course of resolving the interlocutory appeal before it. *Id.* at 1775.

Since *Scott*, we have agreed with the Third Circuit "that *Scott* represents 'the outer limit of the principle of *Johnson v. Jones*[:] where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on

interlocutory review.'" *Wysong v. City of Heath*, 260 F. App'x 848, 853 (6th Cir. 2008) (quoting *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007)). As we concluded in *Wysong*, the Third Circuit's approach represents a "principled way to read *Johnson* and *Scott* together and to correct the rare 'blatan[t] and demonstrabl[e]' error without allowing *Scott* to swallow *Johnson*." *Id.*

The problem for Officer Lopez is that his record-supported evidence, including the videotape, does not "blatantly contradict" Carter's description of what happened inside the store. And it does not even purport to cover, much less contradict, the excessive-force allegations regarding activities outside of the store. Once it is established that this evidence does not "blatantly contradict" Carter's version of the facts, that leaves Officer Lopez only with quibbles over the district court's reading of the summary-judgment record, which we do not have authority to second guess.

For similar reasons, we reject Officer Lopez's related argument that "MRI evidence presented by [Officer Lopez] blatantly contradict[s] Carter's claim that she sustained a 'retorn rotator cuff and two discs in her neck.'" Br. at 21. As best we can tell, it is not even clear that the MRI evidence is materially inconsistent with the doctor's report provided by Carter. Nowhere in the report does it indicate that "Carter's medical and physical problems were long standing and predate the incident," as Officer Lopez asserts. Br. at 21. But more importantly, Officer Lopez misreads *Scott*. That decision does *not* stand for the proposition that a court should grant summary judgment if the moving party merely presents conflicting evidence. On the contrary, the existence of a material

factual dispute makes denial of summary judgment a court's only appropriate response. *Scott* stands only for the narrow proposition that summary judgment is appropriate when one party's story "is blatantly contradicted by the record, *so that no reasonable jury could believe it*." 127 S. Ct. at 1776 (emphasis added). Officer Lopez at most presented evidence that cast doubt on Carter's version of the facts. That is hardly enough for us to conclude that "no reasonable jury" could find that Carter was injured, and it does not overcome *Johnson*'s prohibition on appellate second guessing of the appropriate inferences to draw from the record.

### III.

The City and Officer Lopez make two arguments in support of their motion for summary judgment on Carter's state-law claims: (1) that there is no evidence of an "objective injury," Br. at 25, and (2) that the district court erred in rejecting their assertion of governmental immunity as an issue "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," JA 245. But the "objective injury" argument is no more convincing in the state-law context than it was in the § 1983 context: It simply represents a disagreement with the district court's reading of the summary-judgment record, a contention over which we do not have jurisdiction at this stage. And even if they were right that the district court erred in rejecting their claim as having been "adverted to in a perfunctory manner," which does not seem to be the case, they still have failed to show that they are entitled to governmental immunity on the state-law claims. The same material-fact disputes that doom Officer Lopez's qualified-immunity claim doom their

governmental-immunity claims—at least in the context of summary judgment.  To the extent that the City could argue that a different standard governs its governmental-immunity claims, it has not done so on appeal.  Instead, the City has simply sought relief on precisely the same grounds as Officer Lopez—which, as we have shown, are unavailing.

## IV.

The City of Wyoming separately argues that it is entitled to summary judgment on Carter's § 1983 claim against the City.  But the district court *granted* the City's motion for summary judgment on this claim.  Because the City cannot appeal a victory, there is nothing more to say.

## V.

For these reasons, we affirm.