NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
FILE NAME: 15A0376N.06
CASE NO. 14-3330
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 27, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DELRICO OLIVER, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE SOUTHERN** |
| KARL GREENE, | ) | **DISTRICT OF OHIO** |
| | ) | |
| *Defendant-Appellant.* | ) | **OPINION** |
| | ) | |

Before:  BATCHELDER, MOORE, and SUTTON, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  In this interlocutory appeal, defendant Karl Greene challenges the district court's denial of his assertion of qualified immunity in this 42 U.S.C. § 1983 prisoner civil rights action alleging excessive force.  We AFFIRM.

**I.**

Delrico Oliver was a prisoner at an Ohio Department of Youth Services facility where Karl Greene was a guard.  In an altercation between the two on February 10, 2011, Greene grabbed ahold of Oliver, wrestled him to the ground, choked him, and struck him in the face repeatedly, causing injury.  Surveillance video recorded the altercation.  When Oliver sued, claiming excessive force, Greene moved for summary judgment based on qualified immunity, arguing that Oliver had provoked the use of force, which was necessary and reasonable.

The district court denied Greene's motion upon "find[ing] that there are genuine disputes as to material facts regarding whether Plaintiff [Oliver]'s actions created a threat to Defendant Greene and other employees and whether Greene's initial use of force was reasonable under the circumstances."  R. 33 at 17-18.  Greene filed this timely interlocutory appeal.

**II.**

Ordinarily, such a decision would implicate *Johnson v. Jones*, 515 U.S. 304, 313 (1995), which holds, generally, that we lack jurisdiction over an appeal from a denial of qualified immunity when the denial rests on a genuine dispute of material facts, such as here, whether Oliver's actions created a threat to Greene and others. But *Johnson v. Jones* is narrow and applies only when the challenge on appeal is to an underlying decision that "merely decided a question of evidentiary sufficiency, *i.e.*, which facts a party may, or may not, be able to prove at trial." *Plumhoff v. Rickard*, 572 U.S. --, 134 S. Ct. 2012, 2019 (2014) (internal quotation marks and citations omitted). As we have said elsewhere, "*Plumhoff* appears to cabin the reach of *Johnson* to 'purely factual issues that the trial court might confront if the case were tried.'" *Roberson v. Torres*, 770 F.3d 398, 403 (6th Cir. 2014) (quoting *Plumhoff*, 134 S. Ct. at 2019). *See also Family Service Ass'n ex rel. Coil v. Wells Twp.*, -- F.3d --, No. 14-4020, 2015 WL 1726571, *5 (6th Cir. Apr. 16, 2015) ("[The defendant] may be wrong on the merits but that does not deny us jurisdiction to say so—or for that matter deny [the plaintiff] the *benefit* of a merits ruling that establishes on this record that a jury reasonably could rule for him.").

Here, Greene raises two arguments on appeal, neither of which directly challenges the district court's finding of a genuine dispute of material fact as to whether Oliver's actions created a threat to Greene and others. Instead, Greene argues that his evidence, including the surveillance video, so overwhelms (i.e., blatantly contradicts) Oliver's version that it renders the facts undisputed (and in his favor). *See Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012) ("In exceptional circumstances, an appellate court may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is 'blatantly and demonstrably false.'" (citation omitted)). Alternatively, Green

argues that he was entitled to qualified immunity even if we accept Oliver's version, thus rendering the facts undisputed (in Oliver's favor). *See Roberson*, 770 F.3d at 405 ("We have jurisdiction over this question on interlocutory review because it asks whether the facts, as alleged, indicate a violation of clearly established law, such that the denial of qualified immunity was appropriate."). Consequently, we have jurisdiction over this interlocutory appeal.

### III.

As the district court framed it, the ultimate question was whether Oliver had created a threat that justified Greene's use of force that was necessary and reasonable. Because both parties offered competing evidence, the court found a genuine dispute of material facts and, hence, a decision for a jury. Greene does not contest this decision directly. Instead, Greene attempts to re-cast the facts as undisputed (either in his favor or Oliver's) and seeks a determination as a matter of law, based on one or the other "undisputed" version of the facts.

Greene's primary contention is that his evidence, most notably the surveillance video, renders the facts and events in question undisputed, such that the district court erred by "accept[ing] the Plaintiff's version of events as true," R. 33 at 12-13, and "viewing the evidence in the light most favorable to Plaintiff, as required on summary judgment," R. 33 at 14. While Greene is partially correct about the value of a surveillance video, he is incorrect about the district court's analysis and whether the material facts are subject to genuine dispute here.

Typically, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). More to the point:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . [Rather,] [the court] should [] view[] the facts in the light depicted by the videotape.

3

*Id*. at 380-81. But in finding a "blatant contradiction" the Court was considering a situation in which the video would "speak for itself." *Id*. at 378 n.5; *see also Carter v. City of Wyoming*, 294 F. App'x 990, 992 (6th Cir. 2008) ("Appellate judges are free to trust their eyes when a videotape unequivocally shows what happened during an encounter with the police and unequivocally contradicts the claimant's version of events."). Inferences supported by the record, including the video, remain drawn in favor of the non-moving party. *See Scott*, 550 U.S. at 381 n.8.

Here, Oliver contends that Greene needlessly subjected him to excessive force by taking him to the ground, choking him, and repeatedly punching him in the face. Greene replies that, initially, he was trying to restrain Oliver, an unruly inmate, and later was just defending himself. Moreover, Greene argues that his evidence, including not only the video but also certain deposition testimony and exhibits, blatantly contradict Oliver's version and therefore render "undisputed" the events at the initiation of the altercation and prove unequivocally that Oliver initiated it. Greene also cites cases to support his contention that courts can, pursuant to *Scott*, rely on evidence other than video (e.g., medical records) to refute a party's version of events.

Taking this last contention first, it goes too far on the present facts. Here, Greene's claim is that his other evidence (deposition testimony, affidavits, and prison records) is more credible than is Oliver (a proven liar) and, therefore, he has blatantly contradicted Oliver to the point that there is no dispute of fact as to whether Oliver started the fight. That is neither *Scott*'s holding nor the law. Oliver urges one view, Greene's evidence supports another. That is a dispute.

As for the surveillance video and this court's ability to view the facts in the light depicted by the video (such that it speaks for itself), Greene is mistaken about that as well. Greene does not argue that the district court ignored or misrepresented the events in the video. The court referred to the video several times in its opinion, giving both objective description and analysis:

The video evidence shows that Plaintiff went to the podium and signed the YBIR(s). He then stayed at the podium talking animatedly to Greene. Thereafter, Plaintiff walked to his room, put on his tennis shoes and returned to the podium unsolicited by Defendant Greene. As Plaintiff returned to the podium, he put[] his hands up in the surrender position. The video surveillance of the podium shows Plaintiff aggressively approach[ed] Defendants Greene, Anderson, Barbee[,] and Waryck as they, in turn, form[ed] a semi-circle around Plaintiff in an attempt to confine Plaintiff. Defendant Greene then extended his arm into Plaintiff as he approached. Plaintiff swiped Defendant Greene's hand away. Plaintiff then appear[ed] to back away from Defendant Greene. Defendant Greene advance[d] toward Plaintiff. Waryck attempted to separate Plaintiff and Defendant Greene and instructed Plaintiff to 'lock up' (go to his room) and told Defendant Greene to step back.

According to Plaintiff's Affidavit, he then pointed at Greene and told him if he was going to do something to just go ahead and do it. According to Waryck and other witnesses, Plaintiff attempted to jab and/or punch Defendant Greene. In response, Defendant Greene grabbed Plaintiff and was trying to take him to the ground. *The video shows that Greene had to push Waryck to the side to be able to reach Plaintiff.* Thereafter, an eighty-four (84) second struggle ensued.

R. 33 at 4-5 (citations omitted) (emphasis added). Greene does not dispute this rendition of events. Instead, he disputes the meaning of and motivations that underlie these events. That is, he disputes the inferences to be drawn from them. The district court continued:

As noted [] and as shown on the video, prior to the altercation, Waryck stepped between Plaintiff and Defendant Greene in an attempt to de-escalate the situation. Waryck then told Defendant Greene to step back away from the area. Despite this directive, Defendant Greene pushed Waryck out of the way in order to grab Plaintiff. Moreover, Barbee and Anderson were also present at the scene at this time. *Thus, this evidence suggests that no force was needed to control Plaintiff.* To the contrary, the evidence establishes that Waryck told Defendant Greene to back away from Plaintiff.

R. 33 at 14-15 (citations omitted; emphasis added).

Greene does not contend that the panel should "trust their eyes [because the] videotape unequivocally shows what happened during [the] encounter," *see Carter*, 294 F. App'x at 992, or that the video "speaks for itself," *see Scott*, 550 U.S. at 378 n.5. Greene urges us to interpret the video in line with his argument and his supporting evidence. That is not the law.

The problem for [the defendant] is that his record-supported evidence, including the videotape, does not 'blatantly contradict' [the plaintiff]'s description

5

of what happened . . . . Once it is established that this evidence does not 'blatantly contradict' [the plaintiff]'s version of the facts, that leaves [the defendant] only with quibbles over the district court's reading of the summary-judgment record, which we do not have authority to second guess.

. . . [The defendant] misreads *Scott*. That decision does not stand for the proposition that a court should grant summary judgment if the moving party merely presents conflicting evidence. On the contrary, the existence of a material factual dispute makes denial of summary judgment a court's only appropriate response. *Scott* stands only for the narrow proposition that summary judgment is appropriate when one party's story 'is blatantly contradicted by the record, so that no reasonable jury could believe it.' [The defendant] at most presented evidence that cast doubt on [the plaintiff]'s version of the facts. That is hardly enough for us to conclude that 'no reasonable jury' could find that [the defendant initiated the confrontation]. . . .

*See Carter*, 294 F. App'x at 992-93 (citations and emphasis omitted).

Greene's deposition testimony, affidavits, prison records, and his view of the meaning of and motivations for the events depicted in the surveillance video might persuade a jury, but it does not "speak for itself," *Scott*, 550 U.S at 378 n.5, nor does it "unequivocally contradict[] [Oliver]'s version of events," *see Carter*, 294 F. App'x at 992. That is, Greene has not shown that Oliver's version is "blatantly and demonstrably false," such that we "may overrule [the] district court's determination that a factual dispute exists." *See Austin*, 690 F.3d at 496.

Alternatively, Greene argues that he was entitled to qualified immunity even accepting Oliver's version of events. Greene bases this argument on what he sees as "[t]he undisputed facts surrounding [his] use of force"; facts that allegedly indicate force was necessary "to protect himself" from Oliver's assaults and "to maintain or restore order." Apt. Br. at 34; Apt. Reply Br. at 16 ("There is sufficient evidence already in the record that was not genuinely disputed to prove that YS Greene's use of force in restraining Mr. Oliver by taking him to the floor was reasonable and necessary."). But Oliver denies that he provoked Greene and contends that Greene needlessly injured him by way of excessive force when he took him to the ground,

choked him, and repeatedly punched him in the face. Under this version of the facts, Greene did subject Oliver to excessive force and, correspondingly, is not entitled to qualified immunity.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** The majority and I agree that we have jurisdiction to decide whether the record blatantly contradicts Oliver's version of the facts. We also agree that the video and the record as a whole do not definitively show that Oliver's description of the event is incredible. We disagree, however, about whether, after concluding that the record does not blatantly conflict with Oliver's version of events, we have jurisdiction to consider Greene's claim that he is immune from suit. Binding precedent in this court compels the conclusion that we do not.

We are without jurisdiction to consider interlocutory appeals contesting a denial of qualified immunity insofar as the appellant officer disputes the plaintiff's record-supported version of the facts. *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). The one exception to this rule is when "the plaintiff's version of the facts, which the district court accepted, was 'so utterly discredited by the record . . . that no reasonable jury could have believed him.'" *Romo v. Largen*, 723 F.3d 670, 674 n.3 (6th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Once the court of appeals has concluded that the record does not blatantly contradict the plaintiff's version of events, however, we do not have jurisdiction to conduct a de novo review of the district court's determination that there is a genuine dispute of material fact. *Romo*, 723 F.3d at 674–75 n.3, 675–76. Neither the Supreme Court nor this court sitting en banc has overruled *Romo*, and therefore we are bound by its holding. 6 Cir. R. 32.1(b).

The majority further contends that Greene has argued alternatively that he is entitled to qualified immunity even if the court accepts Oliver's version of the facts. True, Greene purports to raise an alternative argument in his "Summary of Argument" that even under Oliver's facts the force Greene used was not excessive as a matter of law, Appellant Br. at 27, but Greene does not actually make the argument in his brief. Greene's entire argument is premised on his own version of the facts. After reciting the standard of review and the purpose of qualified immunity,

Greene immediately launches into argument about why Oliver is not to be believed. Appellant Br. at 32–33. Greene then argues that his use of force was justified to protect himself and to maintain or restore discipline. *Id.* at 33–34. But his arguments rest entirely on two critical, disputed facts: first, that Oliver struck or attempted to strike Greene three times, *id.* at 32–33; and second, that Oliver had disobeyed several orders, *id.* at 33–35. The only authorities Greene cites in support of his argument are cases where the corrections officers' use of force was justified by self-defense. *See* Appellant Br. at 35 (citing *Johnson v. Gallagher*, No. CIV. A. 93-0782, 1994 WL 25378, at *3 (E.D. Pa. Jan. 28, 1994); *Peebles v. Frey*, 617 F. Supp. 1072, 1074 (E.D. Mo. 1985), *aff'd*, 802 F.2d 462 (8th Cir. 1986) (table)). In sum, Greene's entire "legal" argument rests on a finding that Oliver punched him and disobeyed orders and nothing more, and Greene does not address whether his use of force was justified if Oliver had simply pointed his finger and had followed orders.

Our published cases establish that "[m]ere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court," *Thompson v. Grida*, 656 F.3d 365, 368 (6th Cir. 2011), unless we can isolate *legal* arguments. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 309–10 (6th Cir. 2005) ("If . . . aside from the impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction.") (citation, internal quotation marks, and alterations omitted). Because Greene's entire legal argument rests on his version of the facts, we do not have jurisdiction to reach the alternative qualified-immunity argument. Thus, I would affirm the district court on the sole basis that the record does not blatantly contradict Oliver's version of the facts. Insofar as Greene otherwise disputes Oliver's version of the facts, Greene's appeal should be dismissed.