NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0327n.06

Case No. 14-2346

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JASON ZUHL, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JASON HASKINS, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| *Defendant-Appellant*. | ) | |
| | ) | |

FILED
Jun 16, 2016
DEBORAH S. HUNT, Clerk

Before: BATCHELDER and STRANCH, Circuit Judges; and HOOD, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.** In this interlocutory appeal from a denial of a motion for summary judgment, a defendant sheriffs' deputy, Jason Haskins, argues that the plaintiff's evidence did not create a genuine dispute of material fact so as to overcome his assertion of qualified immunity. We establish our appellate jurisdiction and AFFIRM.

**I.**

At about 6:00 a.m. on January 29, 2010, Deputy Haskins led a team of police in the execution of a search warrant at the home of Jason and Anne Zuhl. The warrant was based on information that Jason and Anne were selling narcotics (specifically cocaine or crack cocaine) and, more specifically, that Anne had recently been selling cocaine at the bar where she worked.

When the officers arrived at the Zuhl residence, both the exterior front porch lights and the interior living room lights were on, allowing Jason to see out and the officers to see in. Jason had been sitting in the living room, awaiting his ride to work, when the four officers approached the front door and knocked. According to Jason, as he responded to the knock, he saw the men

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

through the window, but did not realize they were police; instead, he mistakenly assumed they were Anne's acquaintances from work, so he turned from the door towards the bedroom to wake her. The officers, watching Jason through the window, thought it suspicious that he had turned and gone back into the house upon seeing them. Consequently, they smashed in the door and entered.

By that time, Jason claims he had turned down the hallway towards the bedroom, but when he heard the police smash the door and enter, shouting "search warrant," he turned back towards them in a surrender position. According to Jason, at that point, the lead officer (who turned out to be Deputy Haskins) came around the corner and clobbered him in the face with a large, police-issue or "Maglite"-type flashlight. While Jason did not actually see Deputy Haskins hit him, because it happened too fast, he heard it (claiming that it has a "very distinct sound") and felt it, just before being tackled to the ground and handcuffed. It was not until moments later, while lying on the ground, that he fully realized that he had been struck in the face. Shortly thereafter, he began to complain about it, to which the officers told him to "shut the fuck up."

According to Anne, when the police brought her out of the bedroom, she saw Jason handcuffed and asked him if he was okay, to which he responded that the police had struck him in the eye. She described him as being very upset by the battery and described his eye as having a "shiner." Redness and discoloration are visible on the photos entered into the record, including the booking photo, though as the district court noted, it was not especially swollen.

As a result of the search, which included a K-9 unit, the police discovered and seized several small quantities of marijuana, some unknown pills, and some drug paraphernalia. They also seized several firearms, which were later determined to have been properly registered to

2

Jason and apparently returned to him. The search did not discover any cocaine. The police arrested Jason and charged him with certain drug offenses. They did not arrest or charge Anne.

In July 2013, Jason filed suit in federal court, pursuant to 42 U.S.C. § 1983, claiming that the officers used excessive force during the execution of the warrant and the arrest. Specifically, he accused Deputy Haskins of needlessly striking him with the flashlight even though he had offered no resistance, was not fleeing, and posed no threat to any officer on the scene. Deputy Haskins moved for summary judgment on grounds of qualified immunity, denying that he struck Jason with the flashlight and claiming, instead, that he had merely been holding the flashlight in front of him as he rushed into the house and into an accidental "collision" with Jason, whom he had not seen around the corner, and had contacted Jason around chest level. He also asserted that Jason surrendered voluntarily, on his feet (i.e., not felled by a flashlight or tackled). Such a minor and accidental collision, Deputy Haskins argued, would not constitute excessive force.

The district court denied the motion based on its identification of genuine disputes of material fact, which would require determination by a jury. Among others, the court specified:

> (1) "When did the arrest occur and how much force was used? There is simply no agreement on any of the determinative facts surrounding when or how [Jason] was seized here, e.g., whether [Jason] surrendered voluntarily after an accidental collision or was intentionally struck and thrown to the floor before he was handcuffed."

> (2) "Also, did [Deputy Haskins] strike [Jason] with his Maglite, and if so, was it accidental? There could be no justification under any set of facts in this case for an intentional striking."

*Zuhl v. County of Berrien*, No. 1:12-cv-1380, 2014 WL 4542450 at *5 (W.D. Mich., Sept. 11, 2014). Thus, in denying qualified immunity, the district court concluded:

> [Jason] claims that Deputy Haskins violated his Fourth Amendment rights through the use of excessive force. The right not to be tackled, struck in the face with a Maglite and thrown to the ground and handcuffed in one's home, by an invading policeman, when one has done nothing, and is not even the target of the warrant, and is trying to surrender to the policeman's will, could not be plainer.

> The police-state type behavior alleged in the [c]omplaint, [and] supported by [Jason]'s testimony, is unquestionably prohibited by the Fourth Amendment. This being so, [Deputy Haskins]'s refutation of these allegations raises, as a practical matter in this 'he-said, she said' context, the same genuine issues of fact that must be decided to resolve [Jason]'s claim in the first place.
>
> Accordingly, Deputy Haskins cannot be granted qualified immunity on this record.

*Id.* at *6. Deputy Haskins filed this interlocutory appeal.

**II.**

Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id.* at 680. In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a "genuine issue of fact," that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).

If the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). The denial of summary judgment is ordinarily not a final decision within the meaning of 28 U.S.C. § 1291 and is not immediately appealable. But the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of [] § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Thus, we may decide an appeal challenging the district court's *legal* determination that the defendant's actions violated a constitutional right or that the right was clearly established. *Id.*

4

We may also decide an appeal challenging a *legal* aspect of the district court's factual determinations, such as whether the district court properly assessed the incontrovertible record evidence. *See Plumhoff v. Rickard*, 572 U.S. --, 134 S. Ct. 2012, 2019 (2014); *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014). And we may decide, as a *legal* question, an appeal challenging the district court's factual determination insofar as the challenge contests that determination as "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Plumhoff*, 134 S. Ct. at 2020.

We may not, however, decide an appeal challenging the district court's determination of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Because such a challenge is purely fact-based, lacking any issue of law, it "does not present a legal question in the sense in which the term was used in *Mitchell*," *Plumhoff*, 134 S. Ct. at 2019, and is therefore not an appealable "final decision" within the meaning of 28 U.S.C. § 1291. These types of prohibited fact-based ("evidence sufficiency") appeals challenge only the plaintiff's allegations (and the district court's acceptance) of "what [actually] occurred[] or why an action was taken or omitted," *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), who did it, *Johnson*, 515 U.S. at 307, or "nothing more than whether the evidence could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We have also explained that the defendant-appellant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal. *See Romo v. Largen*, 723 F.3d 670, 673-74 (6th Cir. 2013).

In the event that legal and factual challenges are confused or entwined, "we must separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Roberson*, 770 F.3d at 402 (citing *Johnson*, 515 U.S. at 319) (quotation marks omitted).

Similarly, we can separate an appellant's reviewable challenges from its unreviewable. *DiLuzio*, 796 F.3d at 610. That is, we can "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

When we accept the district court's factual determinations and rely on the plaintiff's record evidence for the purpose of deciding the interlocutory appeal, we do not ourselves make any findings of fact or declare any inferences for purposes of any subsequent proceedings. *DiLuzio*, 796 F.3d at 611.; *see also Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010) ("Whether [the plaintiff] is ultimately able to prove the alleged factual bases for his claims is a matter left for the finder of fact [on remand]—not the appellate court on interlocutory appeal.").

**A.**

In his brief on appeal, Deputy Haskins claims to be accepting Jason's version of the facts, but then flatly disputes Jason's evidence and relies on his view of the evidence to argue that his actions were objectively reasonable. For example, in his brief, Deputy Haskins argues:

> Plaintiff has not brought forward any substantive testimony to support his assertion of gratuitous violence. As earlier discussed, Plaintiff did not see the actions of Officer Haskins, which, for the sake of this argument, led to his eye being injured. Plaintiff's testimony about what happened is indecisive at best. At one point he confessed that it all happened so fast he doesn't know what happened. He testified inconsistently. For instance, he testified he was standing. Shortly after that he testified he was backing up; then he said he was tackled by Haskins; but then he said Haskins took control of him and put him on the ground real quick. Such inconsistent testimony does not support a violation of a clearly defined constitutional right.

Apt. Br. at 21 (underlining and record citations omitted). By relying on Jason's testimony that he did not actually see the blow (though Jason heard it, felt it, and inferred what had happened) and further criticizing Jason's testimony as inconsistent, and thereby unreliable, Deputy Haskins would have us disbelieve Jason's evidence and decide this factual dispute in Haskins's favor.

But this is exactly the type of factual dispute for which we have no interlocutory appellate jurisdiction. *See*, *e.g.*, *Ortiz*, 562 U.S. at 190; *Behrens*, 516 U.S. at 313. This dispute does not concern the proper assessment of incontrovertible record evidence, *see Plumhoff*, 134 S. Ct. at 2019, or a determination "blatantly contradicted by the record, so that no reasonable jury could believe it," *see Scott*, 550 U.S. at 380. This is merely Deputy Haskins arguing that his testimony, his evidence, and his version of the events are more believable than Jason's testimony, evidence, and version of the events. That is a factual dispute. *See Oliver v. Greene*, 613 F. App'x 455, 458 (6th Cir. 2015). In fact, the district court aptly characterized this dispute as competitive "he said, she said" allegations. More importantly, as we have explained, this is the type of challenge that is unreviewable in this interlocutory appeal.

But rather than dismiss the appeal outright, we can instead discard the fact-based or "evidence sufficiency" challenges and exercise the jurisdiction we do have to review the district court's legal determinations, based on the plaintiffs' version of the facts and the inferences as articulated by the district court. *See Estate of Carter*, 408 F.3d at 310.

**B.**

"It is axiomatic that individuals have a constitutional right not to be subjected to excessive force during an arrest, investigatory stop, or other 'seizure' of his person." *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009); *Graham v. Connor*, 490 U.S. 386, 388 (1989). In measuring "excessiveness," we consider whether the officer's conduct was "objectively reasonable" in light of the prevailing circumstances, such as the severity of the underlying crime and whether the suspect posed an immediate threat to the safety of the officers or others or was actively resisting arrest or attempting to evade arrest by flight. *Id*.

Deputy Haskins led the police entry into Jason's home, for the stated purpose of executing a search warrant, not an arrest warrant. Jason testified that, upon the police entry, he

offered no resistance, was not fleeing, and posed no threat to any officer on the scene; but despite this passive surrender, Deputy Haskins needlessly struck him with the flashlight. In finding a "genuine issue of material fact" (i.e., deciding that Jason had produced sufficient "evidence on which [a] jury could reasonably find" in his favor, *see Anderson*, 477 U.S. at 252), the district court cited the allegations in Jason's testimony, including that the police had "invaded" Jason's home and struck him in the face with a Maglite flashlight, tackled and thrown him to the ground, and handcuffed him, even though Jason "ha[d] done nothing, [wa]s not even the target of the warrant, and [wa]s trying to surrender to the policeman's will." *Zuhl*, 2014 WL 4542450 at *6. In assessing the reasonableness of this conduct, the district court drew certain inferences; e.g., "[t]here could be no justification *under any set of facts in this case* for an intentional striking"; "[t]he *police-state type behavior* alleged in the [c]omplaint, [and] supported by [Jason]'s testimony, is unquestionably prohibited by the Fourth Amendment." *Id*. (emphasis added).

Accepting Jason's version of the facts and the district court's inferences, as we must in deciding this interlocutory appeal as a matter of law, we conclude that the force as alleged was excessive, in violation of Jason's constitutional rights. Moreover, the right to be free of such excessive force was clearly established as of January 29, 2010, the morning at issue here.

**III.**

We AFFIRM the judgment of the district court denying qualified immunity.

**STRANCH, Circuit Judge,** concurring in part and dissenting in part. I concur in Part I and all but the final paragraph of Part II.A of the majority's opinion. I respectfully dissent, however, because our cases that define the limits of interlocutory appellate jurisdiction over denials of qualified immunity involving factual disputes—*Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002), *Beard v. Whitmore Lake School District*, 402 F.3d 598 (6th Cir. 2005), *Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005), and *McKenna v. City of Royal Oak*, 469 F.3d 559 (6th Cir. 2006)—show that we lack jurisdiction in this case.

In *Estate of Carter*, we explained that if "aside from [any] impermissible arguments regarding disputes of fact, [a] defendant [appealing a qualified immunity denial] also raises the purely legal question of whether the facts alleged . . . support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction." 408 F.3d at 310 (quoting *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998)). We also noted another limited area of jurisdiction with respect to interlocutory qualified immunity appeals. Relying on our precedent in *Phelps* and *Beard*, *Estate of Carter* noted that "this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Id.* (citing *Phelps*, 286 F.3d at 298–99; *Beard*, 402 F.3d at 602 n.5). Thus, *Estate of Carter* derives its authority and its limitations from the precedential principles articulated in *Phelps* and *Beard*. *Phelps* explains that we have jurisdiction to disregard defendants' attempts to dispute plaintiffs' facts *only* in cases where "the legal issues are discrete from the factual disputes[.]" 286 F.3d at 298. *Beard* provides that interlocutory jurisdiction over appeals from denials of qualified immunity involving disputed facts only exists where "some minor factual issues are in dispute" and "it does not appear that the resolution of [such] factual issues is needed to resolve the legal issues" also presented. 402 F.3d at 602 n.5; *see also Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001). If, on the other

9

hand, disputed factual issues are "crucial" to a defendant's interlocutory qualified immunity appeal, we remain "obliged to dismiss it for lack of jurisdiction." *Phelps*, 286 F.3d at 298. We reiterated these limitations on interlocutory jurisdiction in *McKenna*, distinguishing our exercise of jurisdiction in *Estate of Carter* and dismissing the interlocutory appeal in *McKenna* on the grounds that "the officer-defendants have in fact made no legal argument for qualified immunity which can be extracted from their reliance on disputed facts." *McKenna*, 469 F.3d at 562 n.2.

In the instant case, as the majority recognizes, Haskins "flatly disputes [Zuhl's] evidence and relies on his view of the evidence to argue that his actions were objectively reasonable." (Majority Op. at 6.) Because Haskins disputes factual issues that are crucial to his interlocutory appeal, I would hold that we lack jurisdiction over this case and are obliged to dismiss under our precedent.