NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0350n.06
Nos. 18-2169/2231

**FILED**
Jul 10, 2019
DEBORAH S. HUNT, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL MICHALSKI, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| TROOPER BENJAMIN SONSTROM (18-2231) | ) | UNITED STATES DISTRICT |
| and DETECTIVE CHRISTOPHER CATES (18- | ) | COURT FOR THE EASTERN |
| 2169), | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| . | | |

BEFORE:    SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

PER CURIAM. Plaintiff Michael Michalski suffered severe injuries to his left orbital bone and left cheek as Defendants Michigan State Trooper Benjamin Sonstrom and City of Taylor Police Officer Detective Christopher Cates arrested him for drug trafficking. Michalski brought this § 1983 claim, alleging that the officers used excessive force in violation of his Fourth Amendment rights. The district court denied Sonstrom's and Cates's requests for qualified immunity, reasoning that "questions of fact exist concerning the amount and type of force Sonstrom and Cates used and whether Michalski had surrendered, was surrendering, or was resisting arrest." Sonstrom and Cates bring this interlocutory appeal. We affirm.

The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical force or threat of force. *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968). The force used must be "'objectively reasonable' in light of the facts and circumstances confronting"

the officers. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Important considerations include the severity of the crime, whether the suspect poses an immediate danger to the officers or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.* at 396.

*Sonstrom.* Sonstrom contends that his actions were reasonable under the circumstances because (1) the crime was severe—a major drug buy-bust of two pounds of marijuana, (2) Michalski actively fled the scene and attempted to evade the officers by hiding in a Target parking lot in his car, (3) the situation was tense and rapidly unfolding, (4) Michalski might be armed, (5) Michalski poked Sonstrom in the eye as the officers pulled him from the vehicle, and (6) the use of force stopped once Michalski was secured. Sonstrom claims that, under these circumstances, a reasonable officer could have inferred active resistance from the suspect, justifying force like knee strikes, open hand controls like brachial stuns, and use of the taser.

Michalski tells a different tale, one which we must accept as true at this stage of the proceedings. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). He claims that the patrol car video shows that although both his hands were clearly up in the air and he offered no resistance, the officers pulled him from his vehicle, slammed him on the ground, began kicking and striking him with closed fists, and tased him two times. And while not dispositive, Michalski's injury is suggestive of excessive force.

The problem for Sonstrom is that "[Michalski]'s version of events is [not] so utterly discredited by the record that no reasonable jury could . . . believe[] him." *Scott*, 550 U.S. at 380. The major piece of evidence in this case—the dashcam video—displays Sonstrom screaming "Get your f***ing hands out the window!" as the officers approach the vehicle with guns drawn. Michalski puts his hands up. Sonstrom pulls Michalski from the vehicle. At this point Sonstrom jerks back, as if he has been poked in the eye, although no poke is clear from the video. Next,

Sonstrom forces Michalski to the ground, and below the camera's view. Sonstrom is seen making a kicking motion, administering several short blows with his left arm, and heard screaming, "give me your F***ing hands!" Michalski responds, "I got my hands right here!" Michalski is then tasered twice by Sonstrom, and a voice is heard saying "Take that baby!" All the parties then move out of the dashcam's purview, but continued commotion can be heard. Because the video does not capture Michalski while he is on the ground after the initial takedown, but before the arrest is completed, it does not definitively establish (1) Michalski's resistance or nonresistance, (2) what blows and kicks were administered and by whom, (3) where those blows landed, and (4) whether they were appropriate or inappropriate under the circumstances.

In short, from the video alone, it is impossible to tell whether Michalski surrendered voluntarily without resistance, as he claims, and whether Sonstrom merely used one knee strike and open hand strikes to incapacitate Michalski and gain compliance. In other words, contrary to Sonstrom's assertion, the video does not blatantly contradict Michalski's version of events. *See Scott*, 550 U.S. at 380. Thus, the question of excessive force is quintessentially one for a jury to decide, and Sonstrom was properly denied qualified immunity. *See, e.g., Oliver v. Greene*, 613 F. App'x 455, 459 (6th Cir. 2015) (affirming denial of qualified immunity to defendant prison guard where the video did not blatantly contradict the plaintiff's claim that he did not create a threat and that the defendant therefore "needlessly injured him by way of excessive force when he took him to the ground, choked him, and repeatedly punched him in the face").

*Cates.* Cates contends that he is entitled to qualified immunity because (1) the only wrongdoing directly attributed to Cates in Plaintiffs' complaint is the allegation that he "unnecessarily restrained and handcuffed [Michalski]"; (2) the arrest was lawful, thus some degree of force was not unconstitutional, *see Terry*, 392 U.S. at 22-27; (3) Cates testified that he did not

strike, hit, elbow, knee, or pull Michalski's hair, and Plaintiff failed to credibly challenge that testimony, testifying that, aside from a uniformed Michigan State Police Trooper, he "didn't see much but silhouettes"; (4) Sonstrom testified that he, and not Cates, struck Michalski on two occasions using a brachial stun; and (5) the video does not show Cates administer any punches, stuns, kicks, or strikes.

It is true that liability under § 1983 must be assessed individually on the basis of each defendant's own actions, *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008), and must be established with admissible evidence, *see* Fed. R. Civ. P. 56(c)(4) (supporting or opposing affidavits "must be made with personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). However, "where a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim against that defendant may survive summary judgment." *Fazica v. Jordan*, — F.3d —, 2019 WL 2417358 No. 18-1457, WL at * 6 (June 10, 2019).

In his deposition, Michalski testified that there were "definitely a lot of hands on me, it wasn't just one police officer," and that he "almost 1,000 percent kn[e]w that all three cops were attacking me." Cates does not dispute that he was present at the scene (he is clearly seen in the video). The video does not exonerate Cates because it does not show what Cates was doing while Michalski was on the ground. And Michalski said that more than one officer repeatedly struck him, up to the point that he was tasered, and he has a serious injury to back up his story. That creates a question of fact of whether Cates threw some of those punches or kicks and whether the force was excessive under the circumstances. Cates was also not entitled to qualified immunity.

For these reasons, we **AFFIRM** the judgment of the district court denying qualified immunity to Defendants Sonstrom and Cates.