RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JERRY T. COBLE,

                *Plaintiff-Appellant,*

       *v.*

CITY OF WHITE HOUSE, TENNESSEE and
CURTIS CARNEY, JR.,

                *Defendants-Appellees.*

No. 09-6156

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00314—Robert L. Echols, District Judge.

Argued:  December 10, 2010

Decided and Filed:  February 11, 2011

Before:  MARTIN and SILER, Circuit Judges; BELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, P.C., Nashville, Tennessee, for Appellant.  Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, P.C., Nashville, Tennessee, for Appellant.  Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

BELL, District Judge.  Plaintiff Jerry T. Coble ("Coble") appeals the district court's entry of summary judgment in favor of Officer Curtis Carney, Jr. on Coble's

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

claim under 42 U.S.C. § 1983 that Officer Carney used excessive force against him during his arrest for  drunk driving.[1]  The issue on appeal is whether the district court erred in finding that there was no question of fact for trial because Coble's testimony regarding the force used was contradicted by a contemporaneous audio recording.  For the reasons that follow, we **REVERSE** the district court's judgment.

## I.

On April 6, 2007, at approximately 10:40 p.m., Officer Curtis Carney, Jr., was on patrol for the City of White House Police Department, when a truck driven by Coble exited the parking lot of Bob & Rhonda's Sports Grill and pulled onto the highway in front of Officer Carney's patrol car.  After seeing the truck cross the fog line three times, Officer Carney activated his in-car video camera and flashing lights.  Coble did not stop. He continued driving until he turned into the driveway of his home and reached the end of his driveway.

Officer Carney pulled up behind him and exited his patrol car.  Coble did not obey Officer Carney's preliminary commands or answer his questions.  Instead, he argued with Officer Carney, told him to get off his property, and began walking toward his house.  When he failed to obey Officer Carney's command to stop, Officer Carney removed his chemical agent from its holster, sprayed Coble, and performed a take-down maneuver, during which Coble sustained an open fracture of his right ankle.  After a struggle on the ground, Officer Carney, with the assistance of Officer Scott Bilbrey, who had arrived on the scene, succeeded in bringing Coble's arms behind his back and handcuffing him.  Once Coble was handcuffed, he did not offer any further resistance.

The dispute that is at the heart of this appeal concerns what happened after Coble was handcuffed.  None of these events were captured on videotape because they did not occur in front of the patrol car. However, even after Officer Carney and Coble were out of camera range, sounds transmitted by the microphone worn by Officer Carney

---

[1]Although Coble also appealed the entry of summary judgment in favor of the City of White House, he subsequently stipulated to the dismissal of his federal claims against the City.

continued to be recorded. Coble testified that Officer Carney pulled him up by the handcuffs, and, pushing him from behind, walked him 7 or 8 steps on his broken ankle, leaving a 34-foot trail of blood. Coble testified that Officer Carney would have known that his leg was broken because bones were sticking out of Coble's leg, his tennis shoe was laid over sideways, one of his legs was shorter than the other, and he was screaming and calling Officer Carney names. Coble testified that when Officer Carney finally stopped, he let go of the handcuffs and dropped Coble face-first on the concrete.

Officer Carney's testimony differs markedly from Coble's testimony. Officer Carney testified that, after handcuffing Coble, he and Officer Bilbrey helped Coble to a standing position and began walking with him toward the patrol car. After three or four steps, Coble said his leg was broken. Officer Carney testified that he looked down, saw that Coble's leg was broken, and immediately sat him down on the driveway.

Coble was transported by helicopter to a hospital. A blood sample collected from him at 2:10 a.m. on April 7, 2007, indicated a blood alcohol level of 0.16. Coble pled guilty to charges of driving under the influence and resisting arrest.

Coble filed this action against Officer Carney, Officer Bilbrey, and the City of White House, alleging claims of excessive force, false arrest, and failure to implement appropriate policies under 42 U.S.C. § 1983, as well as state law claims of negligence, negligent infliction of emotional distress, negligent training and supervision, reckless infliction of emotional distress, and assault and battery. The claims against Officer Bilbrey were dismissed on stipulation of the parties. Officer Carney and the City of White House filed motions for summary judgment. The district court determined that Coble's § 1983 claim for the excessive use of force before he was handcuffed and brought under control was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). With respect to Coble's claim that Officer Carney used excessive force after he was handcuffed by walking him on a broken ankle and dropping him face-first onto the ground, the district court cited *Scott v. Harris*, 550 U.S. 372 (2007), in support of its determination that, in light of the audio recording, it was not required to accept Coble's version of the events:

> Listening to the audiotape, no reasonable jury could find by a preponderance of the evidence that Coble screamed during the first few steps while he was being escorted, that he called Officer Carney names to get him to stop walking, or that Coble "splattered" on the pavement. To the contrary, the audiotape reveals only the sound of shuffling bodies as if the three men were walking, and Coble was silent. After a few moments, Coble cried out that his leg was broken, and the shuffling stopped. An officer said, "Sit down!" There is no audible noise that once could associate with a body dropping or "splattering" to the pavement." . . . The testimony of Officers Carney and Bilbrey square with the audiotape, while Coble's testimony does not. Therefore, under *Scott*, the Court need not adopt Coble's version in ruling on the motions for summary judgment.

*Coble v. City of White House, Tenn.*, No. 08-314, 2009 WL 2850764, at \*11 (M.D. Tenn. Aug. 29, 2009). The district court concluded that because Coble failed to generate a genuine issue of material fact for trial on his constitutional claim, Officer Carney was entitled to summary judgment.

The district court also concluded that Officer Carney was entitled to qualified immunity, and that there was no evidence to support Coble's claims against the City of White House for failure to train or supervise. The district court accordingly granted the defendants' motions for summary judgment on Coble's § 1983 claims, and declined to exercise supplemental jurisdiction over Coble's state-law claims. Coble appealed.

**II.**

Coble's sole challenge on appeal is to the district court's determination that Officer Carney did not use excessive force after Coble was restrained in handcuffs.[2]

We review a district court order granting summary judgment de novo. *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as

---

[2]Coble has conceded that, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and Tennessee law, his plea of guilty to resisting arrest barred any claim that Officer Carney used excessive force against him before his arrest.

a matter of law." *Id.* (quoting *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009)).

A constitutional excessive force claim is analyzed under an "objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). "The first step in assessing the constitutionality of [an officer's] actions is to determine the relevant facts." *Scott*, 550 U.S. at 378. To the extent there is disagreement about the facts, we must review the evidence in the light most favorable to the plaintiff, and draw all inferences in his favor. *McKenna v. Edgell*, 617 F.3d 432, 437-38 (6th Cir. 2010) (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)).

Construing the facts on summary judgment in the light most favorable to the non-moving party usually means adopting the plaintiff's version of the facts. *Scott*, 550 U.S. at 378. However, the Supreme Court clarified in *Scott* that facts must be viewed in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." *Id.* at 380 (quoting Fed. R. Civ. P. 56(c)). In *Scott*, the Supreme Court held that a police officer was entitled to summary judgment on a motorist's claim that the officer used excessive force in ramming his car after a high-speed chase, notwithstanding the fact that the motorist and the officer gave conflicting testimony regarding the events in question. *Id.* at 386. In *Scott,* the conflicting testimony did not create an issue of fact for trial because the record included a videotape capturing the police chase which clearly contradicted the motorist's contention that he was driving carefully. *Id.* at 379. As noted by the Supreme Court:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* at 380. In the summary judgment context, "appeals courts should not accept 'visible fiction' that is 'so utterly discredited by the record that no reasonable jury could have

believed' it." *United States v. Hughes*, 606 F.3d 311, 319 (6th Cir. 2010) (quoting *Scott*, 550 U.S. at 379-81).

Coble contends that *Scott* and its progeny in the Sixth Circuit have limited *Scott* to cases where the events were recorded on a videotape,[3] and that it was improper for the district court to extend *Scott* to a case involving an audio recording.

There is nothing in the *Scott* analysis that suggests that it should be restricted to cases involving videotapes. The *Scott* opinion does not focus on the characteristics of a videotape, but on "the record." 550 U.S. at 380-81 ("When opposing parties tell two different stories, one of which is *blatantly contradicted by the record . . . .*"; "Respondent's version of events is *so utterly discredited by the record . . . .*"; "At the summary judgment stage . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent *supportable by the record . . .* the reasonableness of [the respondent's] actions . . . is a pure question of law." (emphasis added)). Although we have not had occasion to apply the *Scott* analysis to audio recordings, courts routinely look to *Scott* for guidance in determining whether the non-moving party's version of the events is so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial, even in the absence of a videotape. *See, e.g., White v. Georgia*, 380 F. App'x 796, 798 (11th Cir. 2010) (refusing to credit the plaintiff's testimony that she was shot where the medical records conclusively established that her injuries where not caused by a gunshot); *Carter v. City of Wyoming*, 294 F. App'x 990, 992 (6th Cir. 2008) (holding that MRI evidence did not "blatantly contradict" the plaintiff's claim); *Cooper v. City of Rockford*, No. 06-C-50124, 2010 WL 3034181, at *2 n.3 (N.D. Ill. Aug. 17, 2010) (refusing to credit a witness statement that the victim was running away when he was

---

[3] *See, e.g., Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008) (finding officer's use of force objectively reasonable based on undisputed facts recorded on police video); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (finding officer's use of force objectively reasonable based almost exclusively on the police video); *Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007) ("[T]his Court will view the events as they unfolded in the light most favorable to Marvin, but never in such a manner that is wholly unsupportable – in the view of any reasonable jury – by the video recording."); *see also Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) ("[A] court may properly consider videotape evidence at the summary-judgment stage.").

shot because the autopsy report was clear that the bullet entered the victim from the front); *see also Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006) (suggesting, before *Scott* was decided, that it would be proper to discount the plaintiff's evidence where the defendants' evidence was "so objectively compelling" that no reasonable juror could believe the plaintiff).

Accordingly, our decision does not turn on whether it was proper for the district court to consider the audio recording – it was – but on whether the district court properly found that Coble's testimony was "blatantly contradicted" by the audio recording in this case. We think not.

The district court found that the audio recording blatantly contradicted Coble's deposition testimony that he screamed during the first few steps while he was being escorted, and called Officer Carney names to get him to stop walking. This finding was based upon the lack of any audible screams or name-calling on the recording. The district court also found that no reasonable jury could find that Coble "splattered" on the pavement because there was "no audible noise that once could associate with a body dropping or 'splattering' to the pavement." 2009 WL 2850764, at *11. The lack of sound on an audio recording cannot be reliably used to discount Coble's testimony. Many factors could affect what sounds are recorded, including the volume of the sound, the nature of the activity at issue, the location of the microphone, whether the microphone was on or off, and whether the microphone was covered. This case differs from *Scott*, where there were no allegations or indications that the recording was doctored or altered in any way, or any contention that what it depicted differed from what actually happened. *Scott*, 550 U.S. at 378. Here, in contrast to the plaintiff in *Scott*, Coble does not merely characterize the recording differently. Rather, Coble insists that the facts differed from what was recorded. Coble testified that he screamed, that he called Officer Carney names, that he was forced to walk on his broken ankle, and that he was dropped face-first on the ground. His testimony is not "blatantly contradicted"

by the lack of corroborating sound on the audio recording.  A reasonable jury could believe Coble's version of the events.[4]

In addition, the recording does not indicate when Officer Carney became aware of Coble's broken ankle, or how far he made Coble walk after he became aware of the injury.  Facts that are not blatantly contradicted by the audio recording remain entitled to an interpretation most favorable to the non-moving party.  Coble's testimony that Officer Carney would have known that his ankle was broken is not "so utterly discredited" by the audio recording, and must be construed in the light most favorable to Coble.  *Cf. Carter*, 294 F. App'x at 992 (denying summary judgment where the videotape did not "blatantly contradict" the plaintiff's description of what happened inside the store, and did not purport to cover, much less contradict, the excessive-force allegations regarding activities outside of the store).

Even if part of Coble's testimony is blatantly contradicted by the audio recording, that does not permit the district court to discredit his entire version of the events.  We allow cases to proceed to trial even though a party's evidence is inconsistent, because "[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Schreiber*, 596 F.3d at 333 (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).  "[W]hen the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." *Id.* (quoting *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.1994)).  "This is the case even when the nonmovant's account is contradictory." *Id.*; *see also Shreve*, 453 F.3d at 688 (crediting, for summary judgment purposes, the plaintiff's testimony as to excessive force, despite contradictions in her deposition); *Jones v. Garcia*, 345 F. App'x 987, 990 (6th Cir. 2009) ("But Jones' account does not require such a suspension of reality that no reasonable juror could

---

[4]We do not suggest that discounting a non-movant's testimony at the summary judgment stage on the basis of an audio recording would never be appropriate.  An audio recording may very well provide objectively compelling evidence, particularly when it is presented to show what sounds or statements were made. *See*, *e.g.*, *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (finding no genuine issue of fact for trial where the plaintiff's admissions, captured on audiotape, blatantly contradicted his version of the events).  However, an audio recording is less reliable when it is presented to support findings based on the lack of recorded sound.

accept it, and that is enough to allow a jury to hear the claim.  That Jones may have a difficult time winning his case does not disable him from trying, at least so far as Rule 56 is concerned.").

We cannot say that Coble's version of the events was so utterly discredited by the record that no reasonable jury could believe it.  Accordingly, there is a genuine question of material fact as to whether Officer Carney used excessive force, and the district court erred by granting summary judgment for Office Carney.

## III.

The district court also found that Officer Carney was entitled to qualified immunity.  A defendant is entitled to qualified immunity unless the evidence, viewed in the light most favorable to the plaintiff, "would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*,  609 F.3d 858, 863 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs. of Green Twp*., 583 F.3d 394, 400 (6th Cir. 2009)).  The burden is on the plaintiff to demonstrate that the officer is not entitled to qualified immunity.  *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010).

The district court held that Officer Carney was entitled to qualified immunity because Coble failed to show the violation of a constitutional right.  The district court based this finding, like its summary judgment finding, on the audio recording.  Because we have determined that it was improper to rely on this audio recording over Coble's version of events, this finding is also subject to reversal.

In light of its conclusion that Coble failed to show the violation of a constitutional right, the district court did not consider the second prong of the qualified immunity analysis.  We leave consideration of whether the right was clearly established for determination by the district court in the first instance.

## VI.  CONCLUSION

Because there is a genuine issue of material fact as to whether Officer Carney used excessive force after Coble was handcuffed, we **REVERSE** the order of the district court granting summary judgment to Officer Carney and **REMAND** for further proceedings consistent with this opinion.