**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0467n.06

No. 11-1127

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

RONALD DIXON,                                    )
                                                 )
        Plaintiff-Appellee,                      )
                                                 )
v.                                               )
                                                 )     ON APPEAL FROM THE
COUNTY OF ROSCOMMON,                             )     UNITED STATES DISTRICT
                                                 )     COURT FOR THE  EASTERN
        Defendant,                               )     DISTRICT OF MICHIGAN
                                                 )
JOSEPH QUINTANA; RONALD SMITH;                   )
ALLAN KORY; WILLIAM TATRAI,                      )     **OPINION**
                                                 )
        Defendants-Appellants.                   )
                                                 )

BEFORE:  WHITE, STRANCH, and FARRIS, Circuit Judges.[*]

PER CURIAM.  Ronald Dixon filed this action against the County of Roscommon and

Sheriff's Deputies Joseph Quintana, Ronald Smith, Allan Kory, and William Tatrai, for violations

of his state and federal rights.  The deputies appeal a district court order denying in part their motion

for summary judgment based on qualified and governmental immunity.  We affirm.

This case arises from an incident that occurred in the early morning hours of December 21,

2007.  Dixon was driving a borrowed van, which broke down and came to a stop in front of a

driveway, prompting a neighbor to call the police.  Deputies Quintana and Kory were the first to

---

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the
Ninth Circuit, sitting by designation.

arrive on the scene, and they found Dixon sitting in the disabled van with the lights on. Dixon was not able to provide any identification, appeared to be under the influence of drugs, and falsely told the deputies that he had been accompanied by the van's owner, Theresa Dean. Dixon also provided the deputies with a false name that belonged to someone with a suspended driver's license.

After Sergeant Tatrai and Deputy Smith arrived on the scene, Quintana asked Dixon to open the door and step out of the vehicle. Instead, Dixon rolled up his window, locked the doors, and began smoking what appeared to be a marijuana pipe. After Dixon refused to respond to their repeated commands, the deputies broke the window of the van with a flashlight, hit Dixon on the back of the head, pulled him through the broken window, forced him to the ground, and placed him in handcuffs. Dixon was charged with several crimes arising from the incident and pleaded no contest to resisting and obstructing an officer and guilty to operating a vehicle with a suspended license.

In his complaint, Dixon raised a Fourth Amendment claim of excessive force, state-law claims of assault and battery and gross negligence, and a municipal liability claim against the county. Dixon alleged that the deputies used excessive force by striking him in the head and pulling him from the van, kneeing him in the face when he was on the ground, and choking him. The defendants moved for summary judgment, arguing that Dixon's allegations were contradicted by the video recording of the incident and that the force used was reasonable in light of Dixon's resistance.

The district court concluded that the force used to extract Dixon from the van and subdue him was reasonable as a matter of law, but that there was a genuine issue of fact as to whether the alleged choking, which appeared to have occurred after Dixon had been subdued, constituted excessive force. Accordingly, the district court denied summary judgment on that portion of Dixon's excessive

force claim, as well as on his state-law assault and battery claim. The district court otherwise granted the motion for summary judgment.

We review de novo the district court's denial of summary judgment based on qualified immunity. *See Moldowan v. City of Warren*, 578 F.3d 351, 373-74 (6th Cir. 2009). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 867-68 (6th Cir. 2011) (citation omitted). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). There is an exception to this rule, however, when the plaintiff's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* at 380. In such cases, the "court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Relying on *Scott*, the defendants argue that Dixon failed to show a genuine issue of fact for trial because the video recording does not support his allegations that he was choked and that, at the time that he was choked, he was not putting forth any resistance. We agree with the district court, however, that the video recording neither proves nor disproves Dixon's claim that he was choked when he was lying face down on the ground after having been subdued. Unlike in *Scott*, where the video recording so discredited the plaintiff's version of events that no reasonable jury could have believed it, a reasonable jury could, after viewing the video recording in this case, believe Dixon's version of the events. *See Coble*, 634 F.3d at 869-70.

Accepting Dixon's version as true, there is a genuine issue of fact as to whether the defendants violated Dixon's clearly established constitutional rights by subjecting him to excessive

force during his arrest. *See Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007). Excessive force claims are analyzed under a reasonableness standard, which takes into account "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

According to his deposition testimony, Dixon was lying on his stomach when one of the deputies, later identified as Tatrai, choked him by pulling back on his head with his forearm to the point that he was unable to breathe and momentarily lost consciousness. Dixon testified that he was attempting to comply with the deputies' commands at the time but was unable to do so because the deputies were lying on top of him, and this testimony is consistent with the deputies' depositions and the video recording. Viewing the facts in the light most favorable to Dixon and assuming he was choked after being subdued, a jury could reasonably find that Sergeant Tatrai used excessive force. *See, e.g.*, *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687-88 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902-05 (6th Cir. 2004).

The defendants attempt to distinguish these and similar cases relied on by the district court by arguing that Dixon "had not been subdued or incapacitated" during the relevant time period and that "the video does not support [Dixon's] assertion that he was choked." Appellant's Br. at 24. These arguments present factual issues that are beyond the scope of our jurisdiction in this interlocutory appeal. *See Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) ("A defendant challenging a denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." (citation and

internal quotation marks omitted)). Simply because the video does not conclusively establish whether or not Dixon was choked does not mean Dixon's story is "blatantly contradicted by the record." *Cf. Scott*, 550 U.S. at 380. When, as here, the defendants rely on their "own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make." *Grida*, 656 F.3d at 367. Accordingly, to the extent that the defendants' arguments rest on disputed facts, we cannot consider them.

Defendants Quintana, Smith, and Kory also argue that they are entitled to qualified immunity because they did not personally participate in the alleged choking and did not have a realistic opportunity to prevent it. *See Binay v. Bettendorf*, 601 F.3d 640, 650-51 (6th Cir. 2010); *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 505-06 (6th Cir. 2007). Although this may present a close issue, it is one the defendants did not raise before the district court, and it was not addressed in the decision below. We generally will not consider issues that are raised for the first time on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006). We will exercise our discretion to depart from this rule only in exceptional circumstances, such as "when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result." *Durden*, 448 F.3d at 922. Because exceptional circumstances are not present here, we decline to reach this issue on appeal.

Finally, the defendants argue that the district court erred by denying their motion for summary judgment on Dixon's state-law assault and battery claim. To be entitled to governmental immunity for an intentional tort under Michigan state law, a defendant "must establish that he was acting in the course of his employment and at least reasonably believed that he was acting within the

scope of his authority, that his actions were discretionary in nature, and that he acted in good faith."

*Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008)). The only disputed factor in this case is "good faith," a "subjective" test under which a defendant is subject to liability only if he acted with "malicious intent." *Odom*, 760 N.W.2d at 229.

The defendants argue that the district court erroneously relied on its determination that the deputies could be found to have used an objectively unreasonable degree of force to hold that they could also be found to have acted in bad faith. We need not address the interplay between Fourth Amendment qualified-immunity and governmental immunity under Michigan law, *see, e.g., Grawey v. Drury*, 567 F.3d 302, 315-16 (6th Cir. 2009), because parts of the record support an inference of malice, including statements made by the deputies during the incident, such as, "You wanna play some more? Huh? You want to play some more? You like playing with the police?" and, "Come on stupid, let's go." *See generally Odom*, 760 N.W.2d at 225 (discussing good faith). Additionally, when Quintana is explaining the situation to Tatrai and Smith, one of them asks, "Are you gonna fuck with him now?" at which point Quintana appears to turn off the audio recording device. In light of this evidence, the district court properly found that there is a genuine issue of fact as to the defendants' good faith and that the defendants are not entitled to summary judgment on this claim.

For these reasons, we affirm the district court's order denying in part the defendants' motion for summary judgment.