NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0168n.06

**FILED**

Mar 20, 2017

DEBORAH S. HUNT, Clerk

Nos. 16-1128/1732

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JOSHUA ALDRIDGE, )<br><br>  Plaintiff-Appellant (16-1128/1732), )<br><br>CHRISTOPHER TRAINOR & ASSOCIATES, )<br>  Petitioner (16-1732), )<br><br>v. )<br><br>CITY OF WARREN, MICH.; OFFICER COLIN )<br>MCCABE; KIMBERLEY TEOLIS, )<br><br>  Defendants-Appellees. ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE EASTERN<br>DISTRICT OF MICHIGAN |

BEFORE: BOGGS, ROGERS, and COOK, Circuit Judges.

ROGERS, Circuit Judge. This case involves the grant of summary judgment for defendants and the imposition of sanctions against plaintiff Joshua Aldridge arising out of a complaint that police officers stopped him on his way to work, dragged him across the ground, and beat him while handcuffed. The defendants' motion for summary judgment contained evidence, including video footage, compelling the conclusion that no such thing happened. Instead, Aldridge was arrested without incident while drunkenly trying to break into a private residence, and he injured himself in a jail fight following his arrest. The district court's grant of summary judgment and its award of sanctions were proper.

The complaint alleged that Officers McCabe and Teolis approached Aldridge in their squad car while he was walking to his usual bus stop on the way to work, and asked him through

the squad-car window to stop so they could talk. Aldridge declined, saying he was running late, at which point the officers allegedly leapt out of their car, grabbed him, and in the ensuing scuffle "slammed him to the ground" and "proceeded to drag [him] across the cement." He was then "handcuffed and punched repeatedly in the face causing injuries and damages." Only after his arrest and transport in the squad car to jail was he then "taken to the hospital for treatment of his injuries."

The defendants filed a motion for dismissal under Rule 12(b)(6) or alternatively for summary judgment, and included with it a number of exhibits, among them a backseat video from the squad car showing Aldridge during his arrest. Those exhibits contained compelling evidence that Aldridge was instead found heavily intoxicated after trying to break into a private residence, and that following an uneventful arrest he was taken by the two officers to the Warren jail where he suffered an injury to his face during a fight with his cellmate. Aldridge opposed that motion, arguing that he had stated valid claims for relief, or alternatively that the defendants' motion for summary judgment was inappropriate because he had yet to be given the opportunity for discovery.

The district court disagreed. Because the defendants had answered Aldridge's complaint, and had attached seventeen exhibits to their motion to dismiss, the court concluded that the motion had effectively become one for summary judgment. The court also denied Aldridge discovery because he had failed to "file an affidavit with the [c]ourt pursuant to Rule 56(d)" describing in detail what discovery he needed and why.

After reviewing the footage and other exhibits, the district court also sided with the defendants on the merits: what Aldridge alleged in his complaint "simply could not have happened." Aldridge had argued that the backseat video was inconclusive, showing only what

had happened after he was placed in the squad car and not the initial encounter with the officers. But in light of Aldridge's evident intoxication and the lack of visible injuries in the video, and the other evidence suggesting that he had sustained his injuries in a jail-cell fight, not at the hands of the officers, the court concluded that "[t]here could be no reasonable juror found anywhere who would possibly be able to have a legal basis or a basis in fact to rule for [Aldridge]." The court therefore granted summary judgment for the defendants.

The district court also granted the defendants' motion for Rule 11 sanctions against Aldridge's counsel, concluding that they "continued to assert that they believed their client's story despite the overwhelming and objective evidence to the contrary." The court therefore ordered monetary sanctions against Aldridge's counsel's firm in the amounts of $10,000 to the defendants' counsel and $2,000 to the court. The court also ordered six hours of court-approved remedial legal education for all of Aldridge's counsel of record. Aldridge now appeals that decision as well as the grant of summary judgment.

On appeal Aldridge again argues that the district court improperly treated the defendants' motion to dismiss as one for summary judgment, and that even if that motion was properly considered under Rule 56, he was nevertheless entitled to discovery before the court considered the motion. But he is wrong on both counts. First, while the defendants' motion sought both a Rule 12 dismissal and, in the alternative, a Rule 56 summary judgment, the presence of a Rule 12 alternative motion did not somehow eliminate the Rule 56 motion. The district court explained in the clearest fashion to Aldridge's counsel that the motion was unquestionably one brought for summary judgment:

> [The motion] says in the heading, "or alternatively for summary judgment." And they attached 17 exhibits. You're a sophisticated and experienced lawyer. You know that that becomes a Rule 56 motion. Also, that 12(b)(6) was not permitted

in this particular case because they answered. So there is nothing about this that will allow you to argue in any reasonable fashion that this is a motion to dismiss.

Given that the defendants' motion was correctly treated as one for summary judgment, the burden then fell on Aldridge, if he wanted discovery, to "file an affidavit pursuant to Fed. R. Civ. P. [56(d)] that detail[ed] the discovery needed, or file a motion for additional discovery." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002). By his own admission Aldridge did neither. He did argue, however, that he needed more time for discovery, but offered no more than the vaguest generalities about why further discovery was necessary or what he hoped to show through that discovery, both of which he was required to explain in at least some detail, *see Short v. Oaks Corr. Facility*, 129 F. App'x 278, 283 (6th Cir. 2015) (citing *Abercrombie*, 280 F.3d at 627). Nor is it clear what Aldridge *could* have said given the evidence arrayed against him. The district court therefore did not abuse its discretion by denying discovery.[1]

The grant of summary judgment for the defendants was also proper on the factual showing they made. Although Aldridge disputes its force, the backseat video provided by the defendants in fact undercuts every paragraph of the story told in his complaint. Aldridge alleged that Officers McCabe and Teolis tried to stop him while he was walking to his usual bus stop, and that he declined because he had done nothing wrong and "was running late to work." But the evidence compellingly shows a different scenario. An inebriated man matching Aldridge's description was reported trying to break into a private residence, and when the officers arrived at the scene, they found Aldridge. Although there is no footage of that initial encounter, witnesses

---

[1] The principal case on which Aldridge relied below and again on appeal—*White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229 (6th Cir. 1994)—is distinguishable for a simple reason: there the non-moving party did comply with what was then Rule 56(f)'s filing requirement, *id.* at 231, while Aldridge has not. *See Abercrombie*, 280 F.3d at 627.

say they saw no beating, and the backseat video reveals that Aldridge was in fact profoundly intoxicated. In the video he can be seen explaining to the officers, between slurred words and while occasionally dozing, that he could not walk ("I kept walking around falling, and falling, and falling"), after what he appears to admit was a night of partying. Aldridge has offered no evidence of his own to contradict any of these exhibits.

Aldridge further claimed that after he declined to stop, the officers got out of the squad car, "picked [him] up" and "slammed him to the ground," "then proceeded to drag [him] across the cement" until they handcuffed him, and then resumed "punch[ing him] repeatedly . . . in the face causing injuries and damages." In contrast, the backseat video shows no wounds or scrapes anywhere on Aldridge's head or face.[2] Indeed, he shows no signs of any of the physical distress that one would reasonably expect to see after an altercation as violent as the one he alleges. Instead, Aldridge repeatedly nods off. Although Aldridge suggests that an absence of visual evidence is not evidence of the absence of an injury, it is hard to see how a reasonable juror, after viewing this footage and listening to the 9-1-1 tape, could believe the story Aldridge tells in his complaint. As the Supreme Court has made clear, such evidence alone justifies summary judgment for the defendants here. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

But the backseat video also reveals another significant inconsistency in Aldridge's story: when he first appears in the video—after the altercation, according to Aldridge—he is *not* handcuffed, Backseat Video (Doc. 22-9), at 06:40:01. Several minutes later, however, while still in the back of the squad car and still in full view of the camera, he is finally handcuffed by one of the officers. *Id.* at 06:45:00-06:45:40. But there is no punching and indeed no altercation of any kind. *Id.* In order to give any credence to the version of events Aldridge alleges in his complaint, then, one would have to believe that the officers violently attacked Aldridge, and

---

[2] His booking photographs—much clearer than the backseat video—also show no injuries.

continued to do so even after handcuffing him on the street, only to remove the handcuffs at some point before placing him in the squad car so that, moments later, they could handcuff him again. This story does not make sense.

Added to the other video footage from the jail showing Aldridge with an apparently torn shirt—reportedly from a fight with his cellmate in which Aldridge was struck in the face—these inconsistences make clear that the record will not bear out the story told in Aldridge's complaint. While the backseat video may not clarify *all* of the details surrounding Aldridge's arrest, as Aldridge repeatedly stresses, whatever questions of fact do remain would not be material to his claim of excessive force, and are therefore not enough to defeat a motion for summary judgment.[3] Because Aldridge cannot possibly explain away all of the video and other evidence indicating that the officers did not use excessive force against him, the officers were entitled to summary judgment. Also, because the city's liability in this case depended on the presence of a constitutional violation by its officers, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the City of Warren was properly granted summary judgment.

Finally, the district court's imposition of Rule 11 sanctions against Aldridge's counsel was proper, for the reasons already well and carefully stated by that court. As the court stated:

> By the time the motion for summary judgment was filed, no reasonable person would (1) believe that [Aldridge] was on his way to work, (2) believe that the 9-1[-1] audio did not describe [Aldridge], (3) disbelieve the third-party witnesses who testified that they did not see [Aldridge] beaten, or (4) believe that [Aldridge] was beaten after having seen the video of him being handcuffed and then sitting in the rear of the police vehicle.

---

[3] Aldridge tries to avoid this conclusion by relying on *Coble v. City of White House,* 634 F.3d 865 (6th Cir. 2011), in which this court held that an audio recording apparently contradicting the plaintiff's allegations was not enough under *Scott* to secure summary judgment for the defendants. *Id.* at 870. But the *Coble* court reached that conclusion only because the plaintiff's version of events was not "so utterly discredited by the record that no reasonable jury could believe it." *Id.* Here, the plaintiff's version was utterly discredited.

On appeal, Aldridge contends that sanctions should be granted only to deter rather than to compensate. But indeed the court made clear in its ruling that the principal objective of the sanctions was "to deter the abuse of the legal process," and specifically capped the defendants' recovery at $10,000, even though defense counsel billed more to defend this suit. Nor has Aldridge pointed to anything in the record or any case that might suggest that the court's award was out of step with Rule 11 or its deterrent purpose. Furthermore, despite Aldridge's claim that allowing the sanctions to stand will chill future civil-rights litigation, just as serious a concern is the corrosive effect that frivolous suits like his have on the prosecution of genuine civil-rights cases. For, as already explained, once the backseat video came to light, it became patently clear that the allegations set forth in Aldridge's complaint could not be true as stated. In light of that fact, Aldridge's counsel had a duty to reconsider their case pursuant to Rule 11. *See Runfola & Assocs. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373-74 (6th Cir. 1996). For these reasons and others already given by the district court, the imposition of sanctions was not an abuse of discretion.

The grant of summary judgment for the defendants and the award of sanctions against Aldridge's counsel are affirmed.