NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0187n.06

Case No. 19-1342

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 01, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JASON BANAS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| MICHAEL HAGBOM, Meridian Township | ) | |
| Police Officer, individually, | ) | **OPINION** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Around 2:00 AM on August 30, 2014, Jason Banas started walking home after a night of drinking and celebrating a Spartans' victory. While cruising the area, Officer Hagbom thought that he saw Banas stumble and fall. So he stopped his car to investigate. Hagbom noticed that Banas was drunk and tried to assess Banas's intoxication level to determine if Hagbom needed to take Banas to the hospital. Unfortunately, the encounter ended with Hagbom taking down Banas, sitting on top of him, kneeing him at least once, and tasing him for ten seconds. Banas sued—alleging civil rights violations. And Hagbom claimed qualified immunity.

The district court granted summary judgment to Hagbom based on qualified immunity for the initial takedown. But the court denied Hagbom summary judgment for the kneeing and the tasing. Both parties appealed, but only Hagbom's appeal of the denial of summary judgment for

the kneeing and the tasing is before us. Because Banas argues only that we should reverse for factual reasons, we lack jurisdiction to address his arguments. So we DISMISS his appeal.

I.

In the early morning on August 30, 2014, Officer Hagbom drove down the road and thought he saw Banas fall on the sidewalk.[1] Hagbom turned his cruiser around and got out to talk with Banas. Banas didn't respond to some of Hagbom's questions right away, prompting Hagbom to ask, "Hello?" (R. 37-3, Video at 01:25.) Once Banas responded, he slurred some words. Hagbom decided that he needed to administer a Preliminary Breath Test (PBT) to determine Banas's intoxication level. Banas tried unsuccessfully. His BAC failed to register, despite Hagbom telling Banas to blow three separate times. Hagbom said he'd try a manual test.

But at that point, Banas started getting frustrated. He insisted he had been walking home and wanted to keep walking home. Banas began moving away from Hagbom and his car, and Hagbom told him to "stop . . . stop." (*Id.* at 06:13–06:18.) Hagbom caught up to Banas, grabbed Banas's arm, told Banas, "Chill . . . all you gotta do is take this PBT," and suggested, "Why don't I call the ambulance to come check you out?" (*Id.* at 06:26–06:37.) Banas agreed, and Hagbom said, "Come back to my car." (*Id.* at 06:37–06:40.)

Hagbom then tried to guide Banas back toward his car, but Banas hunched over, pushing his weight back into Hagbom. Banas claims that he was simply trying to sit down right on the sidewalk. He thought he could wait for an ambulance there instead.

As Banas distributed his weight backwards, the encounter escalated quickly. Hagbom flung his arm around Banas's shoulder and pulled Banas over, down a slope, and onto the grass.

---

[1] Alternatively, Banas claims that he did not fall but bent over to pick up his phone.

Although the video only captured the audio of the contact between the men after the tackle, both parties agree that Banas laid face down on the ground for the next two minutes, with Hagbom sitting on top of Banas. In the video, Banas continued shouting, "Why are you fighting me?" (*Id.* at 06:48–08:20.) And Hagbom constantly repeated, "Put your hands behind your back!" (*Id.*) Twice Hagbom also shouted, "Stop resisting!" (*Id.* at 07:24–07:26.) And about forty-five seconds after the initial takedown, Hagbom warned, "You're about to get tased," and then, "You're going to get tased." (*Id.* at 07:30, 07:42.) Banas still yelled, "Why are you fighting me?"

Hagbom then tased Banas for ten seconds. Hagbom says he finally got Banas's hands behind Banas's back after the tasing so that Hagbom could cuff him. But conflicting testimony exists in the record suggesting Hagbom tased Banas after Banas had cuffs on.

And according to Banas, he did not resist Hagbom while Banas laid on the ground with Hagbom on top of him. Banas claims he did not have his right arm above his head but "somewhere in between" above his head and at his side. (R. 49-3, Banas Dep., PageID 625.) According to Banas, he could not put his arms behind his back because he had a "240 pound behemoth on top of [him]." (*Id.*) And once Hagbom finally moved Banas's hands behind Banas's back, Banas says he provided "a little assistance" to get the hands in place. (*Id.*)

Hagbom, on the other hand, explains that Banas did resist Hagbom while Hagbom sat on top of him. And Hagbom could not get Banas's hands in a position for cuffing because of this resistance. Hagbom claims he had to knee Banas one time (although Banas claims at least three times) and tase Banas to move Banas's hands behind his back.

Banas was eventually charged with and convicted of obstructing or opposing law enforcement in violation of Charter Township of Meridian Ordinance § 50-141 in Michigan state court. And as part of that conviction, the Michigan Court of Appeals found Banas to have resisted

3

arrest during the encounter immediately following the takedown that led to the kneeing and the tasing.

Banas sued under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free of excessive force and unlawful searches and seizures and his Fourteenth Amendment right to be free from a "deprivation of liberty, property, bodily security, and integrity without due process of law." He also argued malicious prosecution. Hagbom moved for summary judgment, arguing qualified immunity. The district court granted summary judgment to Hagbom for the initial takedown. But the court denied summary judgment for Hagbom over the knee strikes and the tasing, since a factual issue exists over whether Banas resisted Hagbom on the ground. Hagbom filed this appeal, contesting the denial of qualified immunity for the kneeing and the tasing.

Banas cross-appealed the district court's grant of summary judgment to Hagbom for the initial takedown. But this court dismissed Banas's cross-appeal because the initial takedown was not so "inextricably intertwined" as to find pendent appellate jurisdiction. We reasoned that the takedown, the knee strikes, and the tasing constituted three discrete events. We need not analyze them together under one case, we said. *Banas v. Hagbom*, No. 19-1373 (6th Cir. Sept. 5, 2019) (order). So here we do not assess the issue of qualified immunity for the initial takedown. Before us are only the questions of Hagbom's entitlement to qualified immunity for the kneeing and the tasing.

II.

For a plaintiff to avoid summary judgment for the defendant based on qualified immunity, the plaintiff must show that the defendant (1) violated a constitutional right and (2) "the violated right was clearly established when [the defendant] acted." *Shanaberg v. Licking County*, 936 F.3d

453, 455 (6th Cir. 2019).  A court can address the factors in either order.  *Hagans v. Franklin Cty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012).

When reviewing a denial of qualified immunity through an interlocutory appeal, we can only resolve legal questions, not factual issues.  *Kirby v. Duva*, 530 F.3d 475, 480–81 (6th Cir. 2008); *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015).  A defendant should concede the plaintiff's set of facts and argue that he still wins based on the law.  *Barry v. O'Grady*, 895 F.3d 440, 443–44 (6th Cir. 2018).  If the defendant does not concede the plaintiff's facts, then we lack jurisdiction "[t]o the extent that defendants challenge the accuracy of [the plaintiff's] factual statements[.]"  *Kirby*, 530 F.3d at 481.  But we retain jurisdiction, despite a defendant's factual disagreement, if the denial of a claim of qualified immunity "turns on an issue of law[.]"  *DiLuzio*, 796 F.3d at 609 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

In other words, when a defendant argues both his factual perspective and legal questions, we can disregard his factual contentions and only decide the legal issues.  *Kirby*, 530 F.3d at 481.  We simply "ignore defendants' attempts to dispute plaintiffs' version of the facts[.]"  *Id.*  Yet if the defendant only argues factual questions, we lack jurisdiction.  *See DiLuzio*, 796 F.3d at 610; *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005); *McKenna v. City of Royal Oak*, 469 F.3d 559, 562 (6th Cir. 2006).

And besides ignoring a defendant's factual argument to assess his legal argument, we may also exercise jurisdiction over a case when the parties dispute the material facts if the plaintiff's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *DiLuzio*, 796 F.3d at 609 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  In this circuit, a video, or audio recording may suffice to "blatantly contradict" the plaintiff's facts.  *Coble v. City*

*of White House*, 634 F.3d 865, 868–69 (6th Cir. 2011). And, of course, if the facts are undisputed, we may evaluate the case in light of clearly established law.

We lack jurisdiction to hear Hagbom's appeal because he only argues factual questions. Banas claims he did not resist Hagbom while on the ground. He said in his deposition that he could not put his arms behind his back because Hagbom was sitting on top of him at the time. Alternatively, Hagbom tries to explain why Banas was, in fact, resisting him on the ground after the body-slam. Hagbom construes his argument as conceding Banas's facts, but then Hagbom points to the parts of Banas's deposition and the Michigan Court of Appeals opinion that suggest Banas did resist while on the ground.

So Hagbom ignores the fact that Banas says he did not resist while lying face down. Hagbom argues purely factual questions by saying that even viewing Banas's facts as Banas alleged, Banas *still resisted*. In so arguing, Hagbom seeks to convince us of his set of facts. He hasn't conceded Banas's allegations at all.

Even so, we could ignore Hagbom's factual assertions that Banas resisted him and only decide the legal questions of qualified immunity that Hagbom presents. But Hagbom does not argue "the legal issue of whether there was a violation of a clearly established constitutional right." *Kirby*, 530 F.3d at 481. Hagbom cited the general propositions for qualified immunity and mentioned that *Graham v. Connor*, 490 U.S. 386 (1989), presents factors for assessing reasonable force. Yet rather than explain why he did not violate any of Banas's constitutional rights or why the violation of the right was not clearly established, Hagbom then only focuses his argument on why we should determine that Banas in fact resisted. Hagbom has only given us factual contentions. So we lack jurisdiction to hear his appeal.

What's more, the record fails to "blatantly contradict" Banas's set of facts so that no reasonable jury could believe it. Although Hagbom shouts "stop resisting" during the scuffle on the grass, the audio does not "so utterly discredit[]" Banas's contention that he could not put his hands behind his back during those two minutes because Hagbom's body was in the way. *Coble*, 634 F.3d at 870. Banas continually yelling "why are you fighting me" means he could have been lying there trying to move his hands behind his back or trying to protect himself, while Hagbom sat on him, kneed him, and ultimately tased him. This is a credibility determination for a jury. So a genuine factual issue remains.[2]

\*     \*     \*

For these reasons, we DISMISS the appeal for lack of jurisdiction.

---

[2] Hagbom cites generally the finding by the Michigan courts that Banas was resisting arrest specifically in relation to the events leading to the tasing. But Hagbom fails to develop an actual argument in connection with this citation. It may well be that issue preclusion, as a result of the Michigan litigation, resolves whether Banas resisted while on the ground—based on Banas's conviction in state court and the fact findings that necessarily accompanied that conviction. *See Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 850–51 (Mich. 2004) (allowing for defensive, nonmutual issue preclusion). This court recognizes Michigan's "crossover estoppel" doctrine, "which precludes the relitigation of an issue from a criminal proceeding in a subsequent civil proceeding, and vice versa." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). But Hagbom's failure to raise issue preclusion means that we will not evaluate that question here. Instead, we leave that question to the trial court in the first instance.