NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0240n.06

No. 21-3809

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LARRY TAWNEY, JR.,

      Plaintiff-Appellant,

v.

PORTAGE COUNTY, OHIO; BILL BURNS,
DAVID W. DOAK, DOUG DRAKE, MATT
HOLBROOK, JOHN HOSTLER, JASON JOY,
DALE KELLY, SHAWN LANSINGER, VINCENT
T. LOMBARDO, DEREK MCCOY, BRYAN
MORGANSTERN, ERIC NOELL, JUSTIN
SCHIFKO, MIKE SKILTON, DAN SMITH,
CAMERON STOCKLEY, ROBERT SYMSEK,
BARRY THRUSH, CHAY VUE, AUSTIN
WILSON, JANICE CLARK, CIRCE HARTMAN,
ERICA JARVIS, CLAUDETTE MCCULLOUGH,
and SUSANNE SATTLER, in their official and
individual capacities,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

```
FILED
Jun 15, 2022
DEBORAH S. HUNT, Clerk
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

OPINION

Before: MOORE, STRANCH, and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Larry Tawney, Jr. alleges that several correctional officers or sheriff's deputies viciously assaulted him while he was detained in the Portage County Jail. He sued the county, the county sheriff, and twenty-three correctional officers and deputies who he alleges may have either been involved in or failed to stop the attack. Tawney brought claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights against various combinations of the defendants, a *Monell* claim against the county, and a state law claim for intentional infliction of emotional distress against the individual defendants. On the defendants'

summary judgment motion, the district court found that video and photographic evidence from the night of and morning after the alleged beating squarely contradicted Tawney's version of events. Explaining that no reasonable jury could conclude that the attack occurred, the district court granted summary judgment to the defendants. For the reasons set out below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

We begin with the allegations of the complaint. Larry Tawney, Jr. spent the night of July 12, 2018, in the Portage County Jail awaiting transport to the Lorain Correctional Institution. Tawney alleges that between 10 p.m. that evening and 5 a.m. on July 13, correctional officers or sheriff's deputies wearing masks and tactical gear entered his cell on the Jail's second floor and beat him to the point that he lost consciousness. Among the injuries claimed were lacerations to his mouth, a dislocated jaw, internal bleeding, and blood clotting. Tawney alleges that, while still unconscious, he received stiches on the outside and inside of his mouth. He asserts that he woke on July 13 with a bloody mouth from the stitches, prompting him to leave a "kite" requesting medical attention for his injuries with the Jail.

That same morning, correctional officers drove Tawney to the Lorrain Correctional Institution. Tawney alleges that upon his arrival he discussed the assault with the intake nurse, but she refused to take photographs of his injuries or to note on the intake form his bruises and other injuries. When he was sent to the Lake Erie Correctional Institution in September 2018, Tawney continued to seek medical care related to the alleged assault. He claims that the treatment he received was inadequate.

Tawney brought this federal civil rights lawsuit in July 2020, alleging claims against Portage County, the Portage County Sheriff David Doak in his official and individual capacities,

the Sheriff's chief deputy Dale Kelly in his official and individual capacities, and twenty-three correctional officers and sheriff's deputies in their official and individual capacities.[1] His first five counts are brought under 42 U.S.C. § 1983 and allege that the defendants violated his Eighth Amendment rights by, among other actions, using excessive force, destroying surveillance footage, failing to adequately train or supervise subordinates who participated in the beating, failing to intervene, acting with deliberate indifference to his serious medical needs, and failing to report the assault. Tawney also brought a claim against Portage County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and a final claim under Ohio law against the individual defendants for the intentional infliction of emotional distress.

Portage County and the individual defendants argue that Tawney fabricated the attack. To refute Tawney's claim that the incident actually occurred, they attached Tawney's medical and video records from July 12 to 13 to their answer to the complaint and then moved for judgment on the pleadings pursuant to Rule 12(c). The district court converted that motion into a motion for summary judgment on one issue—the fact of the attack—and required the refiling of the proffered exhibits to comply with the evidentiary quality standard of Rule 56. The court also allowed limited discovery on whether the incident in question had occurred. Tawney responded in opposition to the motion for summary judgment but did not conduct further discovery.

After full briefing, the district court granted summary judgment to the defendants. The court declined to consider the July 13, 2018 intake medical records from the Lorain Correctional Institution as evidence that Tawney was uninjured, and therefore not attacked on the night of July

---

[1] The defendant correctional officers and deputies are: Robert Symsek, John Hostler, Derek McCoy, Mike Skilton, Circe Hartman, Jason Joy, Dan Smith, Susanne Sattler, Bill Burns, Doug Drake, Vince Lombardo, Justin Schifko, Bryan Morganstern, Claudette McCullough, Janice Clark, Matt Holbrook, Chay Vue, Barry Thrush, Cameron Stockley, Shawn Lansinger, Eric Noell, Erica Jarvis, and Austin Wilson.

12, because Tawney alleged that the intake nurse had refused to document his injuries. But the district court did consider the newly authenticated video evidence and photographs of Tawney from his intake at the Lorain Correctional Institution. Concluding that the video and photographic evidence blatantly contradicted Tawney's allegation of assault, the court found that there was no genuine dispute of material fact regarding the assault's occurrence, and no reasonable jury could return a verdict in Tawney's favor. Tawney timely appealed.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 560 (6th Cir. 2018). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Harris v. Bornhorst*, 513 F.3d 503, 509 (6th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if its resolution "might affect the outcome of the suit," and genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Viewing the evidence in the light most favorable to the non-moving party "usually means adopting the plaintiff's version of the facts." *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011). There is a limited exception to our standard summary judgment analysis, however, when video evidence exists and "so utterly discredit[s]," *id.*, the plaintiff's story that "no reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The parties offered only a handful of records on summary judgment. The defendants provide surveillance videos of Tawney's activity in the jail in the early hours of July 13, 2018, from a little after midnight to about 11:30 a.m. that morning. James Bauerle, the Director of

Engineering for Exacq Technologies and one of the authors of Portage County's Video Management System software, provided an affidavit to authenticate the videos. The roughly eight hours of timestamped video, however, do not include footage of the first two hours—10 p.m. to midnight—of the period in which Tawney alleges that various defendants assaulted him. The defendants also presented Lorain Correctional Institution's intake records and photographs from July 13, the morning after the alleged attack. These records show that Tawney exhibited no medical issues that would be consistent with the alleged physical assault. Tawney filed affidavits from himself, his sister, a fellow detainee who claimed to have heard the alleged attack, and a private investigator. His sister's affidavit included a purported medical "kite" that Tawney filed with the County Jail the morning after the assault, but no authenticating documentation. The defendants presented an affidavit from Lieutenant Bryan Morgenstern asserting that the Portage County Jail did not and does not use medical kites like the one Tawney proffered. Tawney also offered the Jail's records, which indicate that he was detained in a second-floor cell rather than the first-floor cell shown on the videos.

This is a rare case in which the video evidence—even as incomplete as it is—so clearly contradicts a plaintiff's version of events that summary judgment is proper. From a little after midnight on the morning of July 13, 2018, until around 4 a.m., the videos show correctional officers making occasional rounds across the two tiers of the visible jail cells, but no officer or deputy entering any of the cells. Tawney exits cell number 107 on the first floor around 5:30 a.m., and then returns soon after. Although seen only from a distance, nothing about his appearance or gait suggests injury. His face is not bloody, and he walks normally. Around 9:30 a.m. that same morning, Tawney exits his first-floor cell again, and within fifteen minutes is shown mopping outside of his cell door and speaking with others housed in the jail. Tawney appears in other videos

of that morning walking along a hallway beside a correctional officer. Again, his gait appears normal and there are no visible signs of injury. In one video, Tawney sits in a reception area eating a sandwich from a bagged lunch. He does not appear upset or in pain.

Of course, not all individuals react to trauma in the same way. But recall Tawney's allegations: not only was he beaten, but he was also kicked in the head until he fell unconscious and awoke with stitches both inside and outside his mouth. The video and photographic evidence disproves that account. In the security camera footage from July 13, there is no obvious blood, stitches, or wounds near Tawney's mouth. The photographs from the Lorain Correctional Institution taken on July 13 soon after Tawney's arrival at the prison similarly offer no suggestion that he recently suffered any trauma to his mouth or face. The front and side views of Tawney's face show no signs of injury.

Nevertheless, we must be careful with video evidence. We apply the normal summary judgment framework if there is a sign that the video evidence is altered or if other evidence shows that what the video "depicts differs from what actually happened." *See Scott*, 550 U.S. at 378. Tawney asserts that the video evidence is doctored. He first asserts that the defendants' videos are not reliable because a roster history from the Jail shows, and his memory supports, that he was housed on the second floor of the jail rather than in cell 107 as the videos depict. He offers the affidavit of Benjamin Robinson, another man incarcerated in the Portage County Jail in July 2018, who asserts that Tawney slept in a second-floor cell during that period. Robinson states that one night he heard footsteps going into Tawney's cell and "loud thumping noises that [he] would associate with people hitting someone." Tawney suggests that this evidence leaves doubt about whether the videos were taken on July 12 and 13, 2018. Tawney also questions the reliability of the videos based on the skips and jumps in the footage, which he asserts are evidence of editing.

These discrepancies between the video and the roster and the time jumps on the videos, however, are insufficient to create a genuine issue of material fact. Tawney leaves unrefuted the evidence in the record establishing that the videos offer a genuine and accurate depiction of the night in question. Bauerle's declaration authenticating the videos confirms that the videos were recorded with Exacq's software; that, based on a standard cryptographic algorithm, the videos were not edited, altered, or tampered with after they were exported from the server; and that it would be almost impossible for the defendants to edit, alter, or tamper with the files before export. Bauerle also explains that the jumps in the video arise because the security cameras at the Portage County Jail record only in response to motion. The anomalies Tawney identifies are not evidence of tampering, but instead the result of imprecise motion sensing from the cameras. The difference between Tawney's cell number listed on the roster and his location in the video raises some questions about the accuracy of the Portage County Jail's recordkeeping, but the fact remains that the defendants have presented an affidavit from the software developer explaining that the videos' cryptographic algorithm confirms the date and unedited state of the video evidence. Given the unrefuted authenticity and accuracy of the videos, we may rely on those videos in interpreting the events of July 13.

Moreover, Tawney does not dispute the authenticity of the intake photographs from Lorain, taken on the day after the alleged beating. Tawney's primary argument against the evidentiary value of the photographs is that they were not images taken for the purpose of documenting medical issues or injuries. But this does not undermine what the photographs clearly show: Tawney was without obvious facial injuries that would comport with being beaten and having multiple stitches both inside and outside his mouth.

With the evidence clearly contradicting that Tawney suffered any injury on July 13, 2018—and nothing raising genuine doubts about the authenticity and accuracy of that evidence—the district court was correct in granting the defendants summary judgment.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of all defendants.